UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | CASE NO. C17-1677-JCC |
| Plaintiff, | CONSENT DECREE |
| v. | |
| UNITED STATES SEAFOOD LLC, SEAFREEZE ALASKA I LLC, and ALASKA ALLIANCE INC., | |
| Defendants. | |

This matter comes before the Court on Plaintiff's unopposed motion for the Court to enter judgment and a Consent Decree (Dkt. No. 6). On November 8, 2017, Plaintiff filed a notice of settlement and proposed Consent Decree. (Dkt. No. 2). Pursuant to federal regulations, Plaintiff published notice of the Consent Decree in the Federal Register and solicited public comments. (Dkt. No. 6 at 1.) Plaintiff received no public comments during the required notice period. (*Id*.) The Court has reviewed the proposed Consent Decree and its supporting appendices, and finds that the Consent Decree is fair, reasonable, and adequate, and is consistent with the Clean Air Act. Accordingly, the Court ENTERS the following Consent Decree.

//

//

//

# **TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ................................................................. 3

II.     APPLICABILITY ................................................................................. 4

III.    DEFINITIONS ..................................................................................... 7

IV.     CIVIL PENALTY ................................................................................ 10

V.      COMPLIANCE REQUIREMENTS ...................................................... 12

    A.   Compliance with Applicable Law ................................................ 12

    B.   Consent Decree Compliance Plan ................................................ 13

    C.   Training .......................................................................................... 15

    D.   Leak Detection, Calculation, Repair and Verification ................ 16

    E.   Annual Refrigerant Loss Percentage ........................................... 18

    F.   Appliance Conversion ................................................................... 22

    G.   Electronic Records Portal .............................................................. 25

    H.   Third Party Verification Requirements ......................................... 26

    I.   Permits ........................................................................................... 33

VI.     REPORTING REQUIREMENTS ......................................................... 33

VII.    STIPULATED PENALTIES ................................................................ 37

VIII.   FORCE MAJEURE ............................................................................. 41

IX.     DISPUTE RESOLUTION .................................................................... 43

X.      INFORMATION COLLECTION AND RETENTION ..................... 46

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........... 48

XII.    COSTS ................................................................................................. 49

XIII.   NOTICES ............................................................................................ 49

XIV.    EFFECTIVE DATE ............................................................................. 51

XV.     RETENTION OF JURISDICTION ...................................................... 51

XVI.    MODIFICATION ................................................................................ 51

XVII.   TERMINATION .................................................................................. 52

XVIII.  PUBLIC PARTICIPATION .............................................................. 53

XIX.    SIGNATORIES/SERVICE ................................................................. 54

XX.     APPENDICES ..................................................................................... 54

XXI.    INTEGRATION .................................................................................. 54

XXII.   FINAL JUDGMENT ........................................................................... 55

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency (EPA), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendants, United States Seafoods, LLC; Seafreeze Alaska I LLC; and Alaska Alliance LLC, have violated the regulations set forth in 40 C.F.R. Part 82, Subpart F, and promulgated by EPA pursuant to Section 608 of the Clean Air Act (CAA), 42 U.S.C. §§ 7671-7671q.

WHEREAS, Defendants' fishing vessels employ industrial process refrigeration appliances that use a hazardous, ozone-depleting refrigerant gas known as chlorodifluoromethane or "R-22." The Complaint against Defendants alleges that the Defendants did not make timely repairs to leaking refrigeration appliances on their vessels, verify that leaks were effectively repaired, and keep required records in violation of Section 608 of the CAA and the regulations promulgated thereunder at 40 C.F.R. Part 82, Subpart F.

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

Now THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because each of the Defendants resides

and maintains its principal place of business in this district. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants, and consent to venue in this judicial district.

2. For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 113(b) and 608 of the CAA, 42 U.S.C. §§ 7413(b) and 7671g; 40 C.F.R. Part 82, Subpart F.

## II. APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States, and upon the Settling Parties, and any successors, assigns, or other entities or persons otherwise bound by law, and apply to Vessels as specified in this Consent Decree.

4. Upon transfer of ownership and operation of any New Vessel, the Settling Parties are relieved of their obligations under this Consent Decree as to the transferred New Vessel. Within thirty (30) Days of transferring ownership of any New Vessel, the Settling Parties shall provide the United States with notice of the transfer in accordance with Section XIII of this Consent Decree (Notices).

5. The following procedures shall govern transfers of ownership and operation of Current Vessels, and any attempt to transfer ownership or operation of a Current Vessel without complying with this Paragraph constitutes a violation of this Decree.

a. At least sixty (60) Days prior to any transfer of ownership and/or operation of a Current Vessel, the relevant Settling Party shall advise the person to whom the Settling Party intends to transfer ownership and/or operation of a Current Vessel (Transferee) in writing of the existence of this Consent Decree and provide a copy of this Consent Decree to the Transferee, and shall simultaneously provide the United States in accordance with Section XIII

of this Consent Decree (Notices) with a copy of such written notification as well as the proposed transfer agreement.

b. In its notice to the United States, the relevant Settling Party shall indicate whether it intends to request: (1) that the Transferee will be substituted for the Settling Party in this Consent Decree as to obligations concerning the transferred Current Vessel (a Substitution), pursuant to Paragraph 6.b below; or (2) to be relieved of the obligations of the Consent Decree with respect to that Current Vessel without a Substitution of the Transferee for the Settling Party, pursuant to Paragraph 6.a below; or (3) to remain a Settling Party responsible for compliance with this Consent Decree as to the transferred Vessel pursuant to Paragraph 6.c. below.

c. The Settling Parties shall give EPA the opportunity to inspect the to-be-transferred Current Vessel.

6. The relevant Settling Party shall be relieved of its obligations under this Consent Decree as to the transferred Current Vessel only where the following requirements of Paragraphs 6.a or 6.b below are satisfied.

a. <u>Relief from Consent Decree Obligations without a Substitution</u>. A Settling Party may be relieved from the obligations in this Consent Decree without a Substitution only where the relevant Settling Party:

(1) transfers both ownership and operation of the Current Vessel to an entity that is not related to the Settling Parties; and

(2) demonstrates and certifies, in accordance with Paragraph 52 below, that all Appliances at the Current Vessel being transferred have either been Converted pursuant to Paragraph 29 of this Consent Decree, or exempted from Conversion pursuant to Paragraph 30.

b. <u>Substitution of Transferee for Settling Party</u>.

(1)     A Substitution of the Transferee for the Settling Party in this Consent Decree may occur only where the Settling Party Transfers both ownership and operation of the Current Vessel.

(2)     In the notice provided pursuant to Paragraph 5 seeking a Substitution, the Settling Party shall provide the United States with information concerning the proposed Transferee and request approval to substitute the Transferee for the Settling Party with respect to Consent Decree obligations pertaining to the Current Vessel to be transferred.

(3)     Within sixty (60) Days of receiving the notice and request for substitution in Paragraph 5.b(2) above, the United States will notify the requesting Settling Party as to whether it will agree to modify the Consent Decree to effectuate the requested Substitution. The United States' approval of a proposed transfer that seeks a Substitution shall not be arbitrarily and capriciously withheld.

(4)     The United States, the Settling Parties, and the Transferee will execute, and the Court must approve, a modification pursuant to Section XVI of this Consent Decree that:

(a)     Makes the Transferee a party to this Consent Decree;

(b)     Makes the Transferee liable for all obligations and liabilities applicable to the Current Vessel to be transferred; and

(c)     Relieves the Settling Parties of their liability under this Consent Decree for all obligations and liabilities applicable to the Current Vessel to be transferred.

(5)     Notwithstanding the foregoing, a Substitution shall not release the Settling Parties from any obligation under this Consent Decree that is not specific to the

transferred Current Vessel, including the obligations set forth in Sections IV (Civil Penalty) and VII (Stipulated Penalties), and all obligations in Sections V (Compliance Requirements) and VI (Reporting Requirements) with respect to other Current Vessels.

      c.     <u>Transfer without Relieving the Settling Party of Consent Decree Obligations or a Substitution.</u> Where a Settling Party transfers either ownership and/or operation of a Vessel but is not relieved of responsibility for Compliance with this Consent Decree pursuant to Paragraph 6.a above, or a Substitution does not occur pursuant to Paragraph 6.b above, the relevant Settling Party shall remain responsible for compliance with this Consent Decree and the Transferee shall be added as a Settling Party through modification of this Consent Decree under Section XVI of this Consent Decree.

      7.     The Settling Parties shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree, and any Third Party Verifier(s) hired pursuant to Section V.H of the Consent Decree (Compliance Requirements). The Settling Parties shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

      8.     In any action to enforce this Consent Decree, the Settling Parties shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors, or Third Party Verifiers to take any actions necessary to comply with the provisions of this Consent Decree.

### III.     <u>DEFINITIONS</u>

      9.     Terms used in this Consent Decree that are defined in the CAA, or in regulations promulgated thereunder, shall have the meanings assigned to them in the CAA or such

regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Appliance" shall mean all industrial process refrigeration or commercial refrigeration appliance that are located on any Vessel and that normally contain more than 50 pounds of Covered Refrigerant, as defined in 40 C.F.R. § 82.152 or 40 C.F.R. § 82.156(j), as applicable,

b. "Audit Finding" shall mean each way in which any document, record, report, diagram, test, system, review, evaluation, policy, practice, plan, training, procedure, calculation, personnel, equipment, or other item, action, or omission deviates from, or does not comply and conform with, Section V (Compliance Requirements) and with Appendices A and B of this Consent Decree.

c. "Calendar Year" shall mean the period of time beginning January 1 of a given year and running through December 31 of the same year, including weekend and holidays.

d. "Complaint" shall mean the complaint filed by the United States in this action.

e. "Consent Decree" or "Decree" shall mean this Decree.

f. "Consent Decree Compliance Plan," "Plan," or "CDCP" shall mean the Consent Decree Compliance Plan attached as Appendix A to this Consent Decree and implemented pursuant to Paragraph 16 of this Consent Decree, and any revisions made to the CDCP pursuant to Paragraph 18 of this Decree.

g. "Conversion" or "Convert" or "Converted" shall mean the complete removal of an Appliance, or the replacement or modification of an Appliance's components such that the Appliance can no longer operate using any Covered Refrigerant and can only operate

using ammonia.

h.     "Covered Refrigerant" shall mean any refrigerant, as defined in 40 C.F.R. § 82.152 or § 82.156(j) as applicable, with the exception of any exempt substitute as defined in 40 C.F.R. § 82.152 and § 82.154(a)(1).

i.     "Current Vessel" or "Current Vessels" shall mean the aquatic fishing boats or vessels with the following names as of the Date of Lodging:  Seafreeze Alaska (USCG #517242), Vaerdal (USCG #611225), Legacy (USCG #664882), Alaska Beauty (USCG #544967), Alaska Endeavor (USCG #608399), Alaska Knight (USCG #996921), and Alaska Provider (USCG #651455). The term "Vessel" as used herein does not include any structure permanently located on land.

j.     "Date of Lodging" shall mean the Day that this Consent Decree is lodged with the Court for public comment pursuant to Section XVIII (Public Participation) below.

k.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

l.     "Defendants" shall mean United States Seafoods, LLC; Seafreeze Alaska I LLC; and Alaska Alliance LLC.

m.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

n.     "Effective Date" shall have the definition provided in Section XIV (Effective Date).

o.     "Full Charge" shall mean a measurement of Covered Refrigerant made in

accordance with the procedure described in Paragraph 21.

p.  "Interest" shall mean the interest rate set forth in 28 U.S.C. § 1961.

q.  "New Vessel" or "New Vessels" shall mean any aquatic fishing boats or vessels acquired by a Settling Party that are not included in the definition of Current Vessel.

r.  "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

s.  "Parties" shall mean the United States and the Settling Parties.

t.  "Section" shall mean a portion of this Decree identified by a Roman numeral.

u.  "Settling Parties" shall mean United States Seafoods, LLC; Seafreeze Alaska I LLC; Alaska Vaerdal LLC; Alaska Legacy LLC; Epic Alaska LLC; Alaska Beauty LLC; Seabed Surveyor LLC; and Alaska Knight LLC.

v.  "United States" shall mean the United States of America, acting on behalf of EPA.

w.  "Vessel" shall mean any Current Vessel or New Vessel.

## IV.  CIVIL PENALTY

10.  Within sixty (60) Days after the Effective Date, Defendants shall pay the sum of $135,000 as a civil penalty, together with Interest accruing from July 25, 2016, at the rate specified in 28 U.S.C. § 1961 as of July 25, 2016. Defendants shall be jointly and severally liable for the payment of this civil penalty.

11.  Defendants shall pay the civil penalties due at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the Financial Litigation Unit (FLU) of the United States Attorney's Office for the Western District

of Washington after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS) number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Matthew Upton
> 1801 Fairview Ave E. Ste. 100
> Seattle, WA 98102
> Phone: 206-763-3133
> E-Mail: mupton@ussseafoods.net

Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

12.     At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at accntsreceivable@cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIII (Notices); and (iii) to EPA Region 5 in accordance with Section XIII (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. United States Seafoods, LLC et al* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-11506.

13.     Defendants and Settling Parties shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating their federal income tax.

## V.     <u>COMPLIANCE REQUIREMENTS</u>

14.     <u>Applicability of the Requirements of this Section</u>.  All of the requirements of this Section set forth in Paragraphs 15 - 46 below shall apply to all Appliances located on Current Vessels until such Appliances undergo Conversion pursuant to Paragraph 29 below or are exempted from Conversion pursuant to Paragraph 30 below.  Only the requirements of Paragraph 15 and 19 below shall apply to Appliances located on New Vessels during the term of this Consent Decree.

**A.**     **Compliance with Applicable Law**

15.     The Settling Parties shall comply with all applicable requirements of Section 608 of the Clean Air Act, 42 U.S.C. § 7671g, and its implementing regulations. The regulations promulgated under Section 608 are codified at 40 C.F.R. Part 82, Subpart F (Subpart F).  In November 2016, EPA amended and added requirements to Subpart F.  See 81 Fed. Reg. 82272 (Nov. 16, 2016).  The amended and new requirements become effective on different dates. *See, e.g.,* 40 C.F.R. § 82.156(i) (noting that provisions will only apply until January 1, 2019); § 82.157 (setting forth regulations applicable as of January 1, 2019).  The Settling Parties shall comply with whichever Subpart F regulations are applicable at that time.  Where the requirements of Section 608 or Subpart F differ from those set forth in this Consent Decree, the more stringent requirement shall apply.  As applicable to the Settling Parties' Vessels and Appliances, the requirements of Section 608 or Subpart F include, but are not limited to:

    a.     Calculating, Inspecting for, and Repairing leaks in Appliances pursuant to 40 C.F.R. § 82.156(i)(2) or (i)(9) or 40 C.F.R. § 82.157(b), (c), (d), (f), (g) and (j), as applicable;

    b.     Conducting and documenting initial and follow-up verification tests on an appliance-wide basis after a leak in an Appliance is repaired as required by 40 C.F.R.

§ 82.156(i)(3) or 40 C.F.R. § 82.157(d) and (e), as applicable, consisting of one or more of the following methods: (1) soap bubble test; (2) electronic or ultrasound leak detectors; (3) pressure test; (4) vacuum test; (5) fluorescent dye and black light test; (6) infrared test; (7) near infrared (black scatter absorption gas imaging) test; and (8) Halon Refrigeration gas detection methods.

       c.      Keeping all records and reporting as required by 40 C.F.R. § 166 and 40 C.F.R. § 82.156(l) and (m), or 40 C.F.R. § 82.157(l) and (m), as applicable; and

       d.      Using certified, self-contained recovery or recycling equipment available at each Vessel with an Appliance, where required, pursuant to 40 C.F.R. § 82.154, as applicable.

**B.  Consent Decree Compliance Plan**

16.      No later than the Date of Lodging of this Consent Decree, the Settling Parties shall fully implement the Consent Decree Compliance Plan (CDCP) attached as Appendix A to this Consent Decree, in accordance with all provisions and schedules therein.  In the event of a conflict between the CDCP and the terms of this Consent Decree, the terms of the Decree shall control.

17.      Notwithstanding any modifications the Settling Parties may make to the CDCP, the CDCP shall at all times include, at a minimum, the following components:

       a.      A list of all Appliances at all Vessels currently owned by the Settling Parties.

       b.      A schedule for regular leak detection and testing of all Appliances that will assure compliance with Paragraph 22 below.

       c.      The applicable requirements, methodology, and procedures to be followed for determining Full Charge in compliance with Paragraphs 20 and 21 below.

       d.      The requirements, methodology, and procedures applicable to leak

detection, leak rate calculation, leak repair and verification testing that will be followed to assure compliance with Paragraphs 22-25 below;

e.  The applicable requirements, methodology, and procedures to be followed for determining the Annual Refrigerant Loss Percentage in compliance with Paragraphs 26-28 below;

f.  Requirements and procedures for employee training that, at a minimum, meet the requirements of Paragraph 19 below;

g.  The requirements, methodology, and procedures for creating and maintaining records, and, as necessary, reporting to senior managers and/or EPA of:

(1)  All Covered Refrigerant purchases, and any transfers between, additions to, and removals from any Appliance;

(2)  All Covered Refrigerant losses or releases, whether due to leaks or other causes;

(3)  Full Charge determinations;

(4)  Leak rate calculations;

(5)  Leak repairs, including verification tests and, as needed, retrofit or retirement plans and activities;

(6)  Annual Refrigerant Loss Percentage calculations; and

(7)  Modifications to Appliances, including documentation of additions or removal of any components.

h.  Identification of responsibilities of individual employees and managers at different levels, as well as contractors, with regard to Appliances, CDCP compliance, service activities, refrigerant management, recordkeeping and reporting.

18.     The Settling Parties shall review the CDCP at least annually and revise it as necessary to comply with Paragraphs 15 and 17, or as necessary to account for changes in regulatory requirements, technology or circumstances.  Such revisions shall be submitted to EPA annually by the Settling Parties as part of their Annual Report, pursuant to Paragraph 48.k.  EPA may provide written comments on the revisions to the CDCP, or may decline to comment.  If EPA provides written comments within ninety (90) Days of receiving the Settling Parties' Annual Report, the Settling Parties shall within forty-five (45) Days of receiving such comments either: (i) alter and implement the CDCP consistent with EPA's written comments; or (ii) submit the matter for dispute resolution under Section IX of this Consent Decree.

**C.     Training**

19.     All employees of Settling Parties who handle Covered Refrigerant, operate, service or maintain Appliances, or complete records or reports related to Covered Refrigerant, shall undergo training on refrigerant management.  The initial training shall occur no later than January 31, 2018.  After the initial training, subsequent trainings will occur at least every other year.  All new employees who handle Covered Refrigerant, operate, service or maintain Appliances, or complete records or reports related to Covered Refrigerant, shall undergo training on refrigerant management within the first 60 Days of their employment.  The Settling Parties shall document all training including the name of trainer, name and title of trainee, date of training, and description of training provided including topics covered, and the means used to verify understanding of the training.  At a minimum, such training shall address:

a.     Relevant requirements under Section 608 of the Clean Air Act, 42 U.S.C. § 7671g, and its implementing regulations at 40 C.F.R. Part 82, Subpart F and this Consent Decree.

b.     The Settling Parties' policies and procedures, and employees' and contractors' individual responsibilities, for compliance with Section 608 of the Clean Air Act, 42 U.S.C. § 7671g, and its implementing regulations at 40 C.F.R. Part 82, Subpart F, and this Consent Decree, including but not limited to leak detection, leak rate calculation, leak repair and leak repair verification.

c.     The requirements, methodologies, and procedures as well as employees' and contractors' individual responsibilities set forth in the CDCP.

**D.     Leak Detection, Calculation, Repair and Verification**

20.     Each time Covered Refrigerant is added to an Appliance, the Settling Parties shall weigh the Covered Refrigerant added.

21.     Determination of Full Charge.

a.     No later than seven (7) Days after each Current Vessel's first voyage of the Calendar Year commences, the Settling Parties shall calculate the Full Charge of each Appliance on such Current Vessel as follows:

(1)     No later than seven (7) Days after each Current Vessel's first voyage of the Calendar Year commences, for each Appliance on that Current Vessel that was fully evacuated at the end of the prior Calendar Year pursuant to Paragraph 28.a below, the Settling Parties shall add to the Appliance the amount of Covered Refrigerant needed for operations in the current Calendar Year.  The weight of the Covered Refrigerant added shall be the Full Charge of that Appliance for the current Calendar Year.

(2)     For each Appliance that was not fully evacuated at the end of the prior Calendar Year pursuant to Paragraph 28.a below, the sum of the following two measurements shall constitute the Full Charge for the current Calendar Year.

(a) The Pounds Remaining in the Appliance from the prior Calendar Year (in pounds), as determined pursuant to Paragraph 28.b below. This measurement shall be done no later than seven (7) Days after commencement of the first voyage of the Calendar Year for the Current Vessel containing the Appliances.

(b) The weight of any Covered Refrigerant put into the Appliance after the measurement in Paragraph 21.a(2)(a) above was made, through the seventh Day after commencement of the first voyage in the current Calendar Year of the Current Vessel containing the Appliance.

b. Settling Parties shall establish the Full Charge only once for each Appliance in each Calendar Year and shall create a record reflecting the date the Full Charge was calculated and weight of the Full Charge for each Appliance.

c. During the time period before a Settling Party establishes a Full Charge for the Calendar Year in accordance with this Paragraph solely for the purpose of calculating the leak rate of any Refrigerant leaks occurring during this time period, the Full Charge shall be the weight of Refrigerant remaining in the Appliance from the prior Calendar Year as measured pursuant to Paragraph 28.b below (which may be zero if the Appliance was evacuated at the end of the Calendar Year), plus the weight of any Refrigerant added to the Appliance prior to discovery of the leak.

d. Examples of the Full Charge calculation are set forth in Appendix B.

e. The Settling Parties shall comply with the procedures and recordkeeping requirements regarding calculation of Full Charge set forth in the CDCP.

22. <u>Leak Detection Requirements</u>. On at least a weekly basis, a trained technician shall inspect each component of each Appliance on Current Vessels for leaks including all connection points for plate freezers, pumps, seals, valve bonnets and stems, flanged connections,

fittings, hoses and any other accessible locations where leaks have been known to occur. This requirement shall not apply to an Appliance during any period in which it is fully evacuated and contains no Covered Refrigerant.

23. <u>Leak Rate Calculation</u>. The Settling Parties shall calculate a leak rate every time Covered Refrigerant is added to an Appliance using the following formula from 40 C.F.R. § 82.156(j) before January 1, 2019, and § 82.152 after January 1, 2019, and using the Full Charge as calculated pursuant to Paragraph 21 above:

$$\text{Leak Rate (\% per year)} = \frac{\text{pounds of Covered Refrigerant added}}{\text{pounds of Covered Refrigerant in Full Charge}} \times \frac{365 \text{ days/year}}{\text{shorter of: \# days since Covered Refrigerant last added or 365 days}} \times 100\%$$

24. <u>Leak Repair Requirements</u>.

a. For leaks where no leak rate has been calculated or where the leak rate is less than 20% as calculated pursuant to Paragraph 23 above, the Settling Parties shall repair all discovered leaks as soon as practicable but no later than sixty (60) Days of discovery of the leak.

b. For all leaks where the Settling Parties have calculated a leak rate that is equal to or exceeds 20%, the Settling Parties shall find and repair the leak within thirty (30) Days of discovery of the leak.

25. <u>Verification Testing</u>. The Settling Parties shall conduct initial and follow-up verification tests for all repairs by one of the methods set forth in Paragraph 15.b above.

**E.** **<u>Annual Refrigerant Loss Percentage</u>**

26. The total Annual Refrigerant Loss Percentage for each Calendar Year shall not exceed 25% as calculated pursuant to Paragraph 27 below.

27. No later than thirty (30) Days after each Current Vessel has returned to port from its final voyage of each Calendar Year (typically in November or December of each Calendar

Year), the Settling Parties shall calculate a company-wide Annual Refrigerant Loss Percentage

for that Calendar Year (the "Calculated Calendar Year" or "CCY") using the following equation:

| Annual Refrigerant Loss Percentage | = | *((Pounds Added during CCY) – (Pounds Remaining at end of CCY)) + Pounds Lost Off Season* | x 100 |
|---|---|---|---|
| | | *(Full Charge for CCY)* | |

        a.      Where:

        (1)     "Pounds Added during CCY" is the sum of

        (c)     the Full Charges of all Appliances for the Calculated Calendar Year, as determined under Paragraph 21 above; and

        (d)     the total number of pounds of Covered Refrigerant added to all Appliances during the Calculated Calendar Year at any time after the Full Charge calculation was made for the relevant Appliance.

        (2)     "Pounds Remaining during CCY" is the sum of the pounds of Covered Refrigerant remaining in all Appliances at the end of the Calculated Calendar Year as determined under Paragraph 28 below.

        (3)     "Pounds Lost Off Season" shall be calculated only for those Appliances that were not fully evacuated at the end of the Calendar Year prior to the CCY under Paragraph 28.a. below, and shall be the difference between the following:

        (a) the sum of the pounds of Covered Refrigerant measured at the end of the Calendar Year prior to the CCY for all such Appliances under Paragraph 28.b below; and

        (b) the sum of the pounds of Covered Refrigerant measured under Paragraph 21.a(2)(a) above at the start of the Calculated Calendar Year for all Appliances.

        b.     The calculation described above is not affected by when the Settling Parties actually perform the calculation, which may be done at the end of the Calculated

Calendar Year or at the start of the following Calendar Year (so long as it occurs no later than thirty (30) Days after each Current Vessel has returned to port from its final voyage of the Calculated Calendar Year). So, for example, the calculation to determine the Annual Refrigerant Loss Percentage for Calendar Year 2019 (CCY 2019) would be as follows, regardless of whether that calculation is done at the end of Calendar Year 2019 or at the start of Calendar Year 2020:

| Annual Refrigerant Loss Percentage for CCY 2019 | = | $\dfrac{((\text{Pounds Added during 2019}) - (\text{Pounds Remaining at end of 2019})) + \text{Pounds Lost Off Season (between last voyage of 2018 and first voyage of 2019})}{(\text{Full Charge in 2019})}$ | x 100 |
|---|---|---|---|

    c.       An example of an Annual Refrigerant Loss Percentage calculation is set forth in Appendix B.

    d.       The calculation of the company-wide Annual Refrigerant Loss Percentage shall not include Appliances on New Vessels, Appliances on Current Vessels that have been Converted pursuant to Paragraph 29 below, and Appliances on Current Vessels that are exempt from Conversion pursuant to Paragraph 30 below.

    28.     For each Appliance, the pounds of Covered Refrigerant remaining in the Appliance at the end of each Calendar Year ("Pounds Remaining") shall be determined as follows:

    a.       Whenever operationally feasible to do so, the Settling Parties shall fully evacuate all Covered Refrigerant from each Appliance after the final voyage of the Vessel containing the Appliance in each Calendar Year, and shall weigh the pounds of Covered Refrigerant actually recovered.

    b.       When it is not operationally feasible to evacuate an Appliance, the Settling

Parties shall determine the pounds of Covered Refrigerant remaining in that Appliance by having a qualified and registered professional engineer conduct a measurement and calculation of the pounds of Covered Refrigerant in the Appliance. The engineer's procedure must conform to the following criteria:

(1) The engineer's measurement and calculation must be done with a repeatable process, using the same methodology, and substantially similar operating conditions such that year-to-year and Appliance-to-Appliance results may be directly compared with each other.

(2) The engineer's process and conclusions must be documented and described in the Settling Parties' Annual Report pursuant to Paragraph 48 below.

(3) The engineer's process must determine the liquid and gas volumes of Covered Refrigerant in the Appliance at the time of the measurement, and must include considering or performing at least the following:

(e) Monitor and record system pressures.

(f) Determine the volume of all refrigeration system piping and equipment.

(g) Determine liquid levels in the storage vessels as accurately as possible, by using level indication and sight glasses where no electronic probes are installed.

(h) Confirm that plate freezers, cargo hold coils and/or evaporators are pumped out, where practicable, by checking the position of suction valves and thermal expansion valves which may prevent full pump-out of associated evaporators.

(i) Inspect evaporators and empty vessels for signs of external ice buildup, which would indicate the presence of liquid Covered Refrigerant. If external ice

build-up is noted, ice shall be removed prior to conducting the calculation.

(j)     Determine and note the position of closed liquid line valves; lines downstream of a closed valve shall be considered to be free of liquid Covered Refrigerant.

(k)     Include the mass of vapor in the system, given that refrigerant vapor is very dense.

(l)     Account for the fact that condenser drains are usually trapped, and that these large pipes may contain a significant mass of Covered Refrigerant liquid.

(m)     Weigh the pounds of Covered Refrigerant in the Appliance and record value.

**F.     Appliance Conversion**

29.     Except as provided in Paragraph 30 below, the Settling Parties shall Convert each Appliance on each of the following Current Vessels in accordance with the following schedule:

| Current Vessel | Deadline for Conversion |
|---|---|
| Legacy | December 31, 2018 |
| Seafreeze Alaska | December 31, 2019 |
| Vaerdal | December 31, 2020 |
| Alaska Knight and Alaska Endeavor | December 31, 2021 |
| Alaska Beauty and Alaska Provider | December 31, 2022 |

Within fifteen (15) Days of completing each Conversion, the Settling Parties shall provide written certification of such Conversion, and supporting documentation, to EPA in accordance with Section VI (Reporting Requirements).

30.     <u>Exemptions from Conversion Requirements.</u>  The Settling Parties may exempt a Current Vessel from the Conversion requirements in Paragraph 29 above under the following circumstances.

a.   <u>All Current Vessels.</u>

(1)   The Settling Parties may exempt a Current Vessel from the Conversion requirement in Paragraph 29 above provided that:

(n)   no later than the deadline for Conversion set forth in Paragraph 29 above, all refrigeration equipment that is not compatible with ammonia, as described in Appendix C, has been removed from the Current Vessel to be exempted, and not reinstalled on any Vessel subject to terms of this Consent Decree; and

(o)   no refrigeration equipment that is not compatible with ammonia on such Current Vessel, as described in Appendix C, is installed or operated during the remaining term of this Consent Decree.

(2)   No later than the deadline for Conversion set forth in Paragraph 29 above, the Settling Parties shall notify EPA of each exemption and provide documentation demonstrating that all refrigeration equipment described in Appendix C has been removed from the Current Vessel.

(3)   No later than the deadline for Conversion set forth in Paragraph 29 above, and on an annual basis thereafter pursuant to Paragraph 48.l, the Settling Parties shall certify in accordance with Paragraph 52 below that no refrigeration equipment that is not compatible with ammonia remains on the Current Vessel and that no such equipment will be installed on that Current Vessel.

(4)   The Settling Parties shall not install or operate any Appliance or refrigeration equipment on a Current Vessel exempted under this subparagraph during the term of this Consent Decree unless such refrigeration equipment only uses ammonia as a refrigerant.

b.     <u>Alaska Knight and Alaska Provider.</u>

   (1)     As an alternative to the exemption process described in Paragraph 30.a, the Alaska Knight and/or the Alaska Provider may be exempted from the Conversion Requirements set forth in Paragraph 29 above provided that:

   (p)     no later than the deadline for Conversion for the Current Vessel in Paragraph 29 above, the Settling Parties shall modify each Appliance on the Alaska Knight and/or the Alaska Provider so that its maximum capacity is less than 50 pounds of Covered Refrigerant; and

   (q)     no Appliance with a maximum capacity of 50 pounds or more of Covered Refrigerant is installed or operated on the Alaska Knight and/or the Alaska Provider during the remaining term of this Consent Decree.

   (2)     No later than the deadline for Conversion set forth in Paragraph 29 above, the Settling Parties shall notify EPA of each exemption, provide documentation demonstrating that all Appliances on the Alaska Knight and/or the Alaska Provider have been modified so that their maximum capacity is less than 50 pounds of Covered Refrigerant.

   (3)     No later than the deadline for Conversion set forth in Paragraph 29 above, and on an annual basis thereafter pursuant to Paragraph 48.l, the Settling Parties shall certify in accordance with Paragraph 52 below that no Appliance with a maximum capacity of 50 pounds or more of Covered Refrigerant is operating, has been installed, or will be installed or operated on that Current Vessel.

   (4)     If the Settling Parties exempt the Alaska Knight and/or the Alaska Provider pursuant to this subparagraph, the Settling Parties shall not install or operate any

Appliance on such exempted Current Vessels during the term of this Consent Decree unless the Appliance has a maximum capacity of less than 50 pounds of Covered Refrigerant.

31. The Settling Parties shall comply with all requirements of Section 112(r) of the CAA, and the regulations promulgated thereunder, with respect to the handling, storage, transfer, and disposal of ammonia as used in the converted Current Vessels.

## G. Electronic Records Portal

32. No later than the Date of Lodging of this Consent Decree, the Settling Parties shall create and fully implement an Electronic Records Portal (Portal) that, for all Current Vessels and for all Appliances, at all times allows for the electronic availability of all records required under 40 C.F.R. Part 82, Subpart F, Paragraph 40 of this Consent Decree, and the CDCP.

     a. The Settling Parties shall ensure that records (other than video recordings) relating to Full Charge determinations, leak inspections, leak repairs, verification testing, Covered Refrigerant additions, and Appliance servicing are uploaded to the Portal at least on a monthly basis.

     b. The Settling Parties shall ensure that all other records, including video recordings, are uploaded to the Portal as soon as practicable, but at least on a quarterly basis.

     c. All records (including video recordings) in the Portal shall be backed up to a secure location on at least a quarterly basis and maintained pursuant to Paragraph 83 below.

     d. Any paper records created must be retained pursuant to Paragraph 83 below, even if the document or its content have also been converted to electronic form.

33. Upon request, Settling Parties shall promptly give the United States access to the Portal.

**H. Third Party Verification Requirements**

34.     In accordance with the procedures set forth in Paragraph 35 below, the Settling Parties shall jointly hire a Third Party Verifier (TPV) to perform the duties set forth in Paragraphs 41-42 below.  The Settling Parties' contract with the TPV shall require the TPV to perform all of the duties in Paragraph 41 below and to provide Annual Reports as required by Paragraph 42, and to be fully available to consult with EPA, upon EPA's request within a reasonable time and upon reasonable notice.  The Settling Parties shall bear all costs associated with the TPV, cooperate fully with the TPV, and provide the TPV with access, upon reasonable notice and with consideration of operational impacts, to all records, employees, contractors, Vessels and Appliances that the TPV deems reasonably appropriate to effectively perform the duties described in Paragraphs 41 and 42 below.

35.     <u>Hiring Process</u>.  Within sixty (60) Days of the Date of Lodging of this Consent Decree, the Settling Parties shall submit to the United States a list of proposed candidates to serve as the Third Party Verifier.  If practicable, the list shall include at least three candidates to serve as the TPV along with their qualifications.  For each candidate, the Settling Parties shall provide resumes, biographical information, and other relevant material concerning the candidates, including information on the relationship between the Settling Parties and the candidates.  The Settling Parties shall also certify in accordance with Paragraph 52 below that each candidate and its personnel:

a.     have the education, experience, and expertise to serve as the TPV and has experience in the application of the 40 C.F.R. Part 82 regulations to industrial process refrigeration Appliances and familiarity with industrial process refrigeration system design and maintenance;

b.　　has never been employed by any Settling Party;

c.　　have not conducted research, development, design, construction, financial, engineering, legal, consulting or any other advisory services for a Settling Party within the last three years;

d.　　have not been involved in the development of a Settling Party's policies or procedures (including the CDCP) related to compliance with this Consent Decree or the regulations set forth at 40 C.F.R. Part 82, Subpart F; and

e.　　do not have any current direct financial stake in any Settling Party, their refrigerant usage (including purchases), management, or recordkeeping practices.

36.　　<u>Prohibitions on Future Employment of TPV</u>.  The Settling Parties shall not hire, engage, or otherwise use the TPV to provide any services, products or equipment except as provided in its capacity as a TPV, for the term of this Consent Decree.

37.　　Within ninety (90) Days of receiving the list of proposed consultants, the United States shall approve or disapprove each proposed TPV submitted by the Settling Parties.  Within thirty (30) Days after receipt of the United States' approval, the Settling Parties shall select one contractor from those contractors approved by the United States to serve as the TPV.

38.　　In the event that the United States does not approve any of the TPV candidates proposed by the Settling Parties, within sixty (60) Days of receiving the United States' disapproval, or a TPV candidate withdraws, the Settling Parties shall submit an additional three TPV candidates and the process set forth in Paragraph 37 above and this Paragraph 38 shall apply to the newly submitted candidates.

39.　　The Settling Parties shall ensure that the TPV complies with the procedures and requirements detailed in Paragraph 41 below relating to verification of the Settling Parties'

compliance with the requirements of his Consent Decree, and Section 608 of the CAA, and 40 C.F.R. Part 82, Subpart F.

40. <u>Records and Video Recordings</u>. To facilitate the TPV's review, the Settling Parties shall provide the following electronic, video and/or paper records to the TPV by uploading them to the Portal as described in Paragraph 32 above and providing the TPV with continuous unlimited electronic access to the Portal beginning on the date of the TPV's hire:

a. <u>Video Recordings</u>. The Settling Parties shall install and operate at least two (2) video cameras on each Current Vessel that contains plate freezers which shall continuously record activities and maintenance, including refrigeration service activities, at and around the Current Vessel's Appliance(s). The cameras shall be placed such that they provide views of the plate freezer area(s) of each Current Vessel's Appliance. In the event that a Current Vessel carries more than one Appliance or plate freezers at any time, there must be video cameras for each Appliance and plate freezer placed as described above. The video recordings from each camera shall be continuous and display an accurate time-stamp. The frame, angle, focus, content, and video quality of the video recordings from each camera shall be sufficient to ensure that a viewer can clearly observe all refrigeration service activities in the area covered by each camera, and can clearly see the individuals performing the activities. The Settling Parties shall ensure these video recordings are made on board each Current Vessel until such Current Vessel is Converted or exempted from Conversion pursuant to Paragraphs 29 and 30.

b. <u>Other Records</u>. The Settling Parties shall provide the following records, in electronic format (including as necessary scanned hard-copy documents) to the TPV via the Portal:

(1)      The current version of the Settling Parties' CDCP;

(2)      Employee training materials and attendance records;

(3)      All records required to be created under the CDCP; and

(4)      All other records relating to compliance with the requirements of Section 608 of the CAA, 40 C.F.R. Part 82 Subpart F, the CDCP, and this Consent Decree, including but not limited to records of Covered Refrigerant purchases, additions, use, evacuation, and disposal; records relating to Appliance operation, repair, leak detection, leak repair, leak repair verification testing, and records related to the calculation of the Annual Refrigerant Loss Percentage; and all records generated by the Settling Parties pursuant to 40 C.F.R. § 82.156(l), (m) and § 82.166, or § 82.157(l) and (m) and § 82.166, as applicable.

41.    <u>Audits</u>.  Beginning in Calendar Year 2018, the TPV shall conduct two audits each Calendar Year (Audits) to assess compliance at each Current Vessel, until such Current Vessel is Converted or exempted from Conversion pursuant to Paragraphs 29 and 30 above.  The two Audits shall not be scheduled with or announced in advance to the Settling Parties, and must occur no less than three (3) months apart.

a.    In each Audit, the TPV shall review the records provided on the Portal.  In addition to a comprehensive review of the electronic or paper records available in the Portal, the TPV's review in each Audit must include reviewing at least three (3) hours of video footage from each Current Vessel that corresponds with leak inspections, leak repairs, verification tests, Covered Refrigerant additions, or other refrigerant service activities at the Appliance(s) on that Current Vessel.  This review must include any leak repair recordings made pursuant to Paragraph 40.a.  To facilitate review of stationary camera recordings under Paragraph 40.a, the TPV may

use the time and date information on refrigerant records and the time-stamps on the video

recordings to identify appropriate footage to review.

b. In each Audit, the TPV shall:

(1) Assess whether the Settling Parties' records are complete, accurate, and in conformity with the requirements of 40 C.F.R. Part 82, Subpart F, the CDCP, and the terms of this Consent Decree,

(2) Determine whether the Settling Parties' policies, practices, acts, or omissions on the Vessel have complied with the requirements of 40 C.F.R. Part 82, Subpart F, the CDCP, and the terms of this Consent Decree;

(3) Verify the Settling Parties' compliance with the requirements of Section V, including the Settling Parties' calculations of Full Charge and Annual Refrigerant Loss Percentage described in Paragraphs 21 and 27-28, and the Settling Parties' compliance with the limit on the Annual Refrigerant Loss Percentage in Paragraph 26; and

(4) Verify that the Settling Parties' video recordings meet the criteria described in Paragraph 40.a above.

c. If, based on the Audit, the TPV finds that any of the Settling Parties' documents, records, reports, diagrams, tests, systems, reviews, evaluations, policies, practices, plans, training, procedures, calculations, personnel, equipment, or other items, actions, or omissions deviates from, or does not comply and conform with, Section V (Compliance Requirements) and with Appendices A and B of this Consent Decree, the TPV shall within 72 hours notify the Settling Parties and EPA of each Audit Finding. The Settling Parties shall cease such non-compliance as soon as practicable but no later than thirty (30) Days after being notified by the TPV of the Audit Findings. Within thirty (30) Days thereafter, the TPV shall conduct an

additional Audit (Follow-Up Audit) focusing on records and recordings related to the Audit Findings, and immediately notify the Settling Parties of any remaining non-compliance. This process shall continue until the TPV concludes that there are no ongoing Audit Findings. Follow-Up Audits are not a substitute for either of the required twice-a-year Audits required by this Paragraph.

42.   <u>Submission of TPV Annual Reports</u>.  The TPV shall provide a certified Annual Report for each Calendar Year to the Settling Parties and the United States in accordance with the requirements of this Paragraph and Section VI (Reporting Requirements).  Identical Annual Reports shall be provided by the TPV to both United States and Settling Parties at the same time. The first Annual Report shall be provided no later than January 31, 2018, covering the 2017 Calendar Year, with subsequent reports due within thirty (30) Days of the end of each Calendar Year.  Each Annual Report shall include, for the preceding Calendar Year (the "reporting period"), the following information:

a.    Identification of the records (including video recordings) reviewed for each Vessel and the dates of the review;

b.    A description of any temporary or permanent physical changes to any Appliances, including the acquisition of new Appliances or new components, and an independent determination by the TPV of whether and how these changes affect the Appliance's Full Charge;

c.    A description of each Audit Finding during the reporting period (including those that have been corrected), the dates of such non-compliance, whether the non-compliance has been corrected, and the method and dates of such correction;

d.      Any Audit Findings regarding ways in which the CDCP, in its current version and any prior versions in force during the preceding Calendar Year, do not address the requirements of Paragraph 17 above;

e.      Any Audit Findings regarding deficiencies of any Settling Party's employee training with respect to the requirements of Paragraph 19 above; and

f.      The TPV's recommendations, if any, regarding correction or prevention of non-compliance or other issues identified in the Annual Report.

43.     Within sixty (60) Days of receiving the TPV Annual Report required by Paragraph 42 above, the Settling Parties shall submit to EPA a comprehensive response to the TPV Annual Report.  The Settling Parties' responses shall include, at a minimum:

a.      A description of actions the Settling Parties shall implement, or have implemented, to address each of the Audit Findings, including schedules;

b.      An explanation of any Audit Findings identified by the TPV Annual Report with which the Settling Parties do not agree; and

c.      For any actions recommended by the TPV that the Settling Parties do not intend to implement, an explanation for why the Settling Parties will not or cannot implement the recommendation.

44.     The United States shall not be bound by the Audit Findings, recommendations or conclusions of the TPV, and the Settling Parties shall be liable for stipulated penalties to the United States, pursuant to Section VII (Stipulated Penalties), regardless of whether the TPV determines non-compliance.

45.     <u>TPV Replacement Procedure</u>.  If the United States determines independently, or at the request of the Settling Parties, that the TPV is unable or unwilling to satisfactorily perform

or complete the duties described in Paragraph 41 and 42 above, the Settling Parties and the United States shall select a replacement TPV in accordance with the selection procedures in Paragraph 35 above. If the Settling Parties and United States do not agree on the need to select a replacement TPV, the Settling Parties may invoke the dispute resolution procedures in Section IX of this Consent Decree (Dispute Resolution). The United States may assess stipulated penalties for missed Audit deadlines associated with the need to replace a TPV unless the Settling Parties successfully assert that the inability of the TPV to perform the required Audit was due to a Force Majeure event in accordance with Section VIII of the Consent Decree.

**I.**     **Permits**

46.     Where any compliance obligation under this Section requires the Settling Parties to obtain a federal, state, or local permit or approval, the Settling Parties shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. The Settling Parties may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if the Settling Party has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

**VI.**     **REPORTING REQUIREMENTS**

47.     The Settling Parties shall maintain all records set forth in Paragraph 48 below in their original form. Settling Parties shall not erase, change, or replace any original records, except that, in order to ensure correct operation of the CDCP forms, the Settling Parties may correct errors on CDCP forms so long as they maintain a Logbook of Changes for each CDCP form. The Logbook must be filled out at the time each correction is made, and must include the

original entry, the revised entry, and the reason for the revision. With respect to all other records, Settling Parties may create supplemental records to reflect corrections of errors on the original records and such supplemental records must accurately reflect the date and circumstances under which they were created.

48. Within thirty (30) Days of the close of each Calendar Year after the lodging of this Consent Decree, until Termination of this Decree pursuant to Section XVII (Termination), the Settling Parties shall submit to EPA an Annual Report, certified in accordance with Paragraph 52 below, which includes, for the immediately preceding Calendar Year, the following information:

a. A narrative description of all activities performed to comply with the Consent Decree in the last Calendar Year;

b. Copies of all records required under 40 C.F.R. § 82.166 and this Consent Decree that were generated during the preceding Calendar Year;

c. Documentation of all Covered Refrigerant purchases, and any transfers between, additions to, and removals from any Appliance, including the date of such transfers, additions and removals and weight of Covered Refrigerant transferred, added and removed;

d. All Covered Refrigerant losses or releases, whether due to leaks or other causes;

e. The Full Charge for each Appliance calculated in accordance with Paragraph 21 above and the CDCP for the preceding Calendar Year, and all documents underlying its calculation;

f. A description of each leak of Covered Refrigerant, the pounds of Covered Refrigerant released, the leak rate, and the leak rate calculations, as well as a description of each

repair performed, documentation of the repair and all verification tests performed, and, as needed, retrofit or retirement plans and activities;

g.  A description of all modifications to Appliances, including documentation of additions or removal of new components;

h.  A description of all new Appliances placed into service during the preceding Calendar Year, including the date of acquisition and the date placed into service;

i.  The company-wide Annual Refrigerant Loss Percentage during the preceding Calendar Year, as calculated in accordance with Paragraph 27 and the CDCP;

j.  The methodology, process, and results of the professional engineer's calculations, pursuant to Paragraph 28.b, used to calculate the pounds of Covered Refrigerant remaining in any Appliance that was not evacuated, at the end of the prior Calendar Year and the start of the following Calendar Year;

k.  A current copy of the CDCP, reflecting in redline any changes made to the CDCP during the preceding Calendar Year pursuant to Paragraph 18 above; and

l.  With regard to any Current Vessel exempted from the Conversion requirements of Paragraph 29 above, the certified statements required by Paragraphs 30.a(3) and/or 30.b(3), as applicable.

49.  If any Settling Party violates, or has reason to believe that it may violate, any requirement of this Consent Decree, such Settling Party shall notify EPA of such violation and its likely duration, in writing, within seventy-two (72) hours of when that Settling Party first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent, correct, or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, the Settling Party shall so

state in the report. The Settling Party shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day the Settling Party became aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves the Settling Parties of their obligation to provide the notice required by Section VIII (Force Majeure).

50. Whenever any violation of this Consent Decree or any other event affecting the Settling Parties' performance under this Decree, or the operation of a Vessel, may pose an immediate threat to the public health or welfare or the environment, the Settling Parties shall notify EPA orally or by electronic transmission as soon as possible, but no later than twenty-four (24) hours after the Settling Parties first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

51. All reports shall be submitted to the persons designated in Section XIII (Notices).

52. Whenever this Consent Decree requires that a Settling Party "certify" a notification, report, statement or other submission, such submission shall be signed by an official of the submitting Settling Party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

53. The certification requirements of Paragraph 52 above do not apply to emergency or similar notifications where compliance would be impractical.

54.     The reporting requirements of this Consent Decree do not relieve Settling Parties of any reporting obligations required by the CAA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.  Notwithstanding the United States' review and approval of any documents submitted to it by the Settling Parties pursuant to this Decree, the Settling Parties shall remain solely responsible for compliance with the terms of the CAA and its implementing regulations, and this Decree.

55.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.     <u>STIPULATED PENALTIES</u>

56.     The Settling Parties shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any payment of civil penalties, compliance requirements, and submission of any required reports or notifications, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

57.     <u>Late Payment of Civil Penalty</u>.  If Defendants fail to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

58.     The Settling Parties shall pay following stipulated penalties per violation per Day for each violation of the requirements specified in Section V (Compliance Requirements) and the CDCP in the amounts listed below:

    a.     Violation of any requirement in Paragraphs 15-19, 34-45, and 47-55

above, and 82-84 (including CDCP requirements, training, third party verification, reporting and information collection and retention), or of any requirement of the CDCP, or of any requirements set forth in 40 C.F.R. Part 82, Subpart F, except for violations of requirements for which a stipulated penalty may be assessed pursuant to Paragraph 58.b below.

| Period of Delay or Non-Compliance | Penalty Per Violation Per Day |
| --- | --- |
| Days 1-15: | $250 |
| Days 16-30: | $500 |
| Days 31 and beyond: | $1,000 |

b. Violation of any requirement in Paragraphs 20-28 above or the CDCP relating to the Full Charge calculation, leak rate calculation, leak detection, leak repair, leak repair verification, and Annual Refrigerant Loss Percentage calculation) or of any requirements set forth in 40 C.F.R. Part 82, Subpart F requiring leak rate calculation, leak detection, leak repair, and leak repair verification:

| Period of Delay or Non-Compliance | Penalty Per Violation Per Day |
| --- | --- |
| Days 1-30: | $350 |
| Days 31-60: | $750 |
| Days 61 and beyond: | $3,000 |

c. Exceedance of the Annual Refrigerant Loss Percentage in Paragraph 26 above:

| Annual Refrigerant Loss Percentage | Penalty Per Pound Over 25% |
| --- | --- |
| 25.1%-30.4% | $50 per pound |
| 30.5%-60% | $75 per pound |

| Over 60% | $100 per pound |

d. Failure to Convert any Current Vessel as required by Paragraph 29 above that is not exempted pursuant to Paragraph 30 above, or operation of a Current Vessel in violation of Paragraph 30 above:

| Period of Delay or Non-Compliance | Penalty Per Violation Per Day |
| --- | --- |
| Days 1-15: | $1,000 |
| Days 16-30: | $2,000 |
| Days 31 and beyond: | $5,000 |

59. For violation of any other Consent Decree or CPCD term, condition or requirement that does not have a specific stipulated penalty set forth in Paragraphs 57 or 58 above, a stipulated penalty of $150 shall accrue per violation per Day.

60. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

61. The Settling Parties shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.

62. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

63. Stipulated penalties shall continue to accrue as provided in Paragraph 60 above during any dispute resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the Settling Parties shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, the Settling Parties shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Paragraph 63.c below.

c.      If any Party appeals the District Court's decision, the Settling Parties shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

64.     <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date, the stipulated penalties provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Section V (Compliance Requirements) that have occurred between the Date of Lodging and the Effective Date of this Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

65.     The Settling Parties shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 11-12 above, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

66.     If the Settling Parties fail to pay stipulated penalties according to the terms of this Consent Decree, Settling Parties shall be liable for Interest on such penalties, accruing as of the

date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for the Settling Parties' failure to pay any stipulated penalties.

67. The payment of penalties and Interest, if any, shall not alter in any way the Settling Parties' obligations to complete the performance of the requirements of this Consent Decree.

68. Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for the Settling Parties' violations of this Decree or applicable law, including but not limited to an action against the Settling Parties for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.     FORCE MAJEURE

69. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Parties, of any entity controlled by Settling Parties, or of the Settling Parties' contractors, which delays or prevents the performance of any obligation under this Consent Decree despite the Settling Parties' best efforts to fulfill the obligation. The requirement that the Settling Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b)

following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force majeure" does not include the Settling Parties' financial inability to perform any obligation under this Consent Decree.

70.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Parties shall provide notice orally or by electronic mail to EPA Region 5's Branch Chief, Air Enforcement and Compliance Assurance Branch, within seventy-two (72) hours of when Settling Parties first knew that the event might cause a delay. Within seven (7) Days thereafter, the Settling Parties shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Parties' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Parties, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Parties shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the Settling Parties from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Settling Parties shall be deemed to know of any circumstance of which the Settling Parties, any entity controlled by the Settling Parties, or the Settling Parties' contractors knew or should have known.

71.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by

the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify the Settling Parties in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

72. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Parties in writing of its decision.

73. If the Settling Parties elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), they shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, the Settling Parties shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Settling Parties complied with the requirements of Paragraphs 69-70 above. If the Settling Parties carry this burden, the delay at issue shall be deemed not to be a violation by the Settling Parties of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX. <u>DISPUTE RESOLUTION</u>

74. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The Settling Parties' failure to seek resolution of a dispute under this Section shall preclude the Settling Parties from raising any such issue as a

defense to an action by the United States to enforce any obligation of the Settling Parties arising under this Decree.

75.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when the Settling Parties send the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fifteen (15) Days after the conclusion of the informal negotiation period, Settling Parties invoke formal dispute resolution procedures as set forth below.

76.     Formal Dispute Resolution.  The Settling Parties shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph 75, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the Settling Parties' position and any supporting documentation relied upon by the Settling Parties.

77.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of the Settling Parties' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on the Settling Parties, unless the Settling Parties file a motion for judicial review of the dispute in accordance with the following Paragraph 78 below.

78. The Settling Parties may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Settling Parties' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

79. The United States shall respond to the Settling Parties' motion within the time period allowed by the Local Rules of this Court. Settling the Parties may file a reply memorandum, to the extent permitted by the Local Rules.

80. <u>Standard of Review</u>.

a. <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 76 above pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the Settling Parties shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 76 above, the Settling Parties shall bear the burden of

demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

81. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Settling Parties under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 63. If the Settling Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

82. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Vessel covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a. monitor the progress of activities required under this Consent Decree;

    b. verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c. obtain documentary evidence, including photographs and similar data; and

    d. assess the Settling Parties' compliance with this Consent Decree.

83. Until five years after the termination of this Consent Decree, the Settling Parties shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to

the Settling Parties' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, the Settling Parties shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

84.     At the conclusion of the information-retention period provided in the preceding Paragraph 83, the Settling Parties shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Settling Parties shall deliver any such documents, records, or other information to EPA.

85.     The Settling Parties may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Parties asserts such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by the Settling Parties. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

86.     The Settling Parties may also assert that information required to be provided under this Section is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2. As to any information that the Settling Parties seek to protect as CBI, Settling Parties shall follow the procedures set forth in 40 C.F.R. Part 2.

87.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Settling Parties to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

88.     This Consent Decree resolves the civil claims of the United States against Defendants for the violations alleged in the Complaint through December 31, 2012.

89.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Vessels, whether related to the violations addressed in this Consent Decree or otherwise.

90.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Vessels, the Settling Parties shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 88 above.

91.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The Settling Parties are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Settling Parties' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Settling Parties' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, State, or local laws, regulations, or permits.

92.     This Consent Decree does not limit or affect the rights of the Settling Parties or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Settling Parties, except as otherwise provided by law.  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.     COSTS

93.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Settling Parties.

## XIII.     NOTICES

94.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent electronically or by U.S. Mail to the following addresses, except that notices required by

Sections VIII and IX (Force Majeure and Dispute Resolution) shall be sent by both electronic means and by U.S. Mail.  Whenever this Consent Decree requires a submission be made to the United States it shall be made to both the U.S. Department of Justice and EPA.  Whenever this Consent Decree requires that a submission be made to EPA, it need only be sent to EPA and not the Department of Justice.

<u>As to the United States:</u>

      Department of Justice
      Re: DJ # 90-5-2-1-11506
      EES Case Management Unit
      Environment and Natural Resources Division
      U.S. Department of Justice
      P.O. Box 7611
      Washington, DC  20044-7611
      eescasemanagement.enrd@usdoj.gov

<u>As to EPA:</u>

      Chief, Air Enforcement and Compliance Assurance Branch
      EPA Region 5
      77 West Jackson Blvd.
      Mail Code AE-18J
      Chicago, IL  60604-3590
      Phone: 312-886-0243
      E-mail: 5airenforcement@epa.gov

      U.S. Environmental Protection Agency
      Office of Regional Counsel
      Region 5 (C-14J)
      77 W. Jackson Blvd.
      Chicago, Ill.  60604-3590
      Phone: (312) 886-6823
      E-mail: weatherspoon.darlene@epa.gov

<u>As to the Settling Parties and Defendants:</u>

      Matthew Upton, Esq.
      1801 Fairview Ave E. Ste. 100
      Seattle, WA, 98102
      phone: 206-763-3133

E-mail: mupton@usseafoods.net

95. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

96. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. EFFECTIVE DATE

97. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that the Settling Parties hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XV. RETENTION OF JURISDICTION

98. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI. MODIFICATION

99. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

100.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 80 above, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.     TERMINATION

101.     Requirements for Termination.  This Consent Decree may be terminated in accordance with the procedures set forth in Paragraphs 102-104 below when the following conditions have been met:

a.     the Settling Parties have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree one of the following sets of conditions have been met;

b.     each Current Vessels has either been Converted in accordance with Paragraph 29 above, or exempted from Conversion in accordance with Paragraph 30; and

c.     the amount of time has passed for the applicable circumstance as set forth below:

| Circumstance | Required Time |
|---|---|
| All Current Vessels Converted in Accordance with Paragraph 29 above, and no Current Vessels have been exempted from Conversion pursuant to Paragraph 30 above, | One year since the final Conversion. |
| One or more Current Vessels have Converted in accordance with Paragraph 29 above, and one or more Current Vessels have been exempted from Conversion pursuant to Paragraph 30 above, | Five years since the final Conversion. |
| No Current Vessels are required to be Converted and all Current Vessels are exempt | Ten years after the Effective Date. |

| from Conversion in accordance with Paragraph 30 above, | |
|---|---|

102.    If the requirements for termination set forth in Paragraph 101 above have been satisfied, the Settling Parties may serve upon the United States a Request for Termination, stating that the Settling Parties have satisfied those requirements, together with all necessary supporting documentation.

103.    Following receipt by the United States of the Settling Parties' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Settling Parties have satisfactorily complied with the requirements for termination of this Consent Decree set forth in Paragraph 101 above.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

104.    If the United States does not agree that the Decree may be terminated, the Settling Parties may invoke dispute resolution under Section IX (Dispute Resolution).  However, the Settling Parties shall not seek dispute resolution of any dispute regarding termination until thirty (30) Days after service of their Request for Termination.

## XVIII.    PUBLIC PARTICIPATION

105.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The Settling Parties consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent

Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Settling Parties in writing that it no longer supports entry of the Decree.

## XIX.    SIGNATORIES/SERVICE

106.    Each undersigned representative of the Settling Parties, EPA, and the Deputy Section Chief for the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

107.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  The Settling Parties agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.    APPENDICES

108.    The following Appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Settling Parties' CDCP, current as of the Date of Lodging.

"Appendix B" sets forth examples for calculation of Full Charge under Paragraph 21 above and Annual Refrigerant Loss Percentage under Paragraphs 26 above.

"Appendix C" describes refrigeration equipment not compatible with ammonia.

## XXI.    INTEGRATION

109.    This Consent Decree together with Appendices A, B and C constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the

settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXII.     FINAL JUDGMENT

110.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the Settling Parties under Federal Rules of Civil Procedure 54 and 58.

DATED this 27th day of December 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE